John W. Jewett *et al. vs.* Ephraim Lincoln *et al.*

Where different persons claim the same goods by conveyances equally valid, he who first lawfully acquires the possession has the better title.

Where goods are purchased and paid for at a stipulated price, the sale is not affected or qualified by an agreement made in the bill of sale, that the seller should receive any sum for which the goods might sell above the price paid; nor by an agreement therein, that the seller should deliver the goods at another place free of expense to the purchaser.

Proof of a purchase by bill of sale of a quantity of shingles, and that the same quantity, sold to the plaintiffs, were marked with the initial letter of the name of one of them, and that they claimed such as were thus marked as their property, was held proper evidence to be submitted to the jury to show a delivery of the shingles.

Where the jury have found facts decisive of the case in favor of the party prevailing, under legal instructions from the presiding Judge of the C. C. Pleas, a new trial will not be granted, although erroneous instructions may have been given on a distinct point in the case.

Exceptions from the Court of Common Pleas.

This was an action of *trover,* for 100 M. pine shingles, marked W. The plaintiffs, to maintain the issue on their part, claimed title under one *Temple M. Perry,* and introduced a permit or license, given by *Charles Ramsdell* to said *Perry,* of which the following is a copy.

"Permission is hereby given to *Temple M. Perry* to cut and make into shingles and clapboard cuts, and carry the same away, any down timber or such as is not suitable for board logs; and if said *Ramsdell* and *Perry* cannot agree as to the price of stumpage, the same is to be referred to *Daniel Davis* of *Oldtown,* and said *Perry* has liberty to cut saplin pine timber, for timber, any where round the shad pond, and not interfering with permits already agreed for; and payment to be made in *June* next.

"*Bangor, July* 30, 1833.

"*Chas. Ramsdell.*"

The plaintiffs also introduced a bill of sale from said *Perry,* of which the following is a copy.

"*Messrs. Jewett & Wyman,* bought of *Temple M. Perry* one hundred thousand of pine shingles now on the bank of the *Millinocket* river, in the *East Indian* township (so called) in the county

of *Penobscot*, valued at two hundred and fifty dollars, and received payment by credit on said *Jewett & Wyman's* books; and I further agree to run the above described shingles to *Bangor* as soon as there shall be a sufficient quantity of water, to run them in good order and free of expense to the said *Jewett & Wyman*, and deliver the same to them or their agent, *William C. Crosby*, and if the above described shingles sell for more than two hundred and fifty dollars, the said *Jewett & Wyman* are to allow me the overplus after taking out the expense of selling, if there should be any.

" *Sebec, Oct.* 24, 1834.

" *Temple M. Perry.*"

The plaintiffs offered no evidence of any written assignment of said permit to them, or any assignment, except it was to be inferred from the fact of their producing it on trial and having delivered it with the bill of sale and writ, to an officer in *June*, 1835. There was no direct evidence that the plaintiffs ever took possession or had a delivery made to them of the shingles, but it was proved that certain shingles on said township, were, previous to *April*, 1835, marked W. in the woods, and that the plaintiffs made claim to such shingles by directing an officer, who had a writ in their favor against said *Perry*, not to attach shingles marked. W. but to take them as their property under the bill of sale, which together with the permit were delivered him with the writ. Also the fact that W. is the initial letter of the surname of one of the firm of *Jewett & Wyman;* and the witness testified that from the appearance, he should think there were as many as 100 M. with that mark.

The defendants claimed title under the same *Temple M. Perry* by purchase of *Joseph Chase* at *Bangor*, in *June*, 1835; and introduced a bill of sale from said *Perry* as follows.

" *Sept.* 9, 1834. — This day sold *Joseph Chase* one hundred thousand pine shingles, now lying on the bank of the *Millinocket* stream, up the *Penobscot* river, of which he is to hold to all intents and purposes, for collateral security for a debt he is holden to *Thomas F. Hatch* of *Bangor*, for me, of thirty-five dollars; also for two notes said *Chase* now holds against me : — viz. one of sixty-two dollars and thirty-five cents, the other for eleven dollars and fifty cents; said notes on interest.

" *Temple M. Perry.*"

And the plaintiffs proved, that in *May*, 1835, said *Chase* took possession of a part of said shingles marked W. and run them with other shingles to *Bangor*, and sold them to the defendants, who are merchants in *Bangor*.  It was in evidence, that there was a large quantity of shingles on the township, made by the *Perrys*, under the permit, besides those marked W.  The defendants introduced evidence to prove that the shingles were delivered the said *Chase's* agent under the bill of sale to him ; and the plaintiffs produced evidence to rebut and contradict it, which were left to the jury, by *Perham J.*, with directions to inquire, and if they found the shingles marked W. had been delivered to *Chase*, under his bill of sale, before they were taken possession of by the plaintiffs, and that *Chase* had no notice of the plaintiffs' interest in them, to return their verdict for the defendants.  The witness thought defendants bought of *Chase* about 190 M. shingles that were cut on the township, in the winters 1833 and 4, and 1834 and 5, and no evidence was offered to show how *Chase* obtained his title to more than 100 M.  The price of shingles at *Bangor* was from $3 to $4.  The defendants contended, that said permit, thus introduced, could give no right to the plaintiffs, but on this point, *Perham J.* instructed the jury, that they might infer, if they were satisfied from the evidence that said permit was delivered to said plaintiffs to secure them for the supplies which they had or might furnish said *Perry*, and if it was so assigned it would give the plaintiffs a right to hold, by a lien thereon, the shingles made of the timber taken under said permit, but he did not instruct them, that it would give the plaintiffs any lien on the timber before it had actually been cut and taken by said *Perry*.  The defendants also insisted, that there was no proof of a delivery to said plaintiffs, and no evidence from which a delivery could be inferred ; but the Judge instructed the jury, that they might from all the evidence infer a delivery, if they were satisfied there had been one made, or possession taken of the shingles under the plaintiffs' bill of sale.  The defendants also contended, that by the terms of the plaintiffs' bill of sale, it was conditional, and that no property or right of possession in the shingles vested until a delivery to them or their agent in *Bangor*.  But the Judge instructed the jury, that they might regard the bill of sale as giving the plaintiffs a right to immediate possession.  The jury returned a verdict

for the plaintiffs, and gave damage $266,06.    To which rulings of the Court, the defendants' counsel excepted.

*Kent,* argued for the defendants, enforcing the grounds taken at the Court of Common Pleas, and citing, 3 *Stark. on Ev.* 1245 ; *Commonwealth* v. *Parmenter,* 5 *Pick.* 279 ; *Flagg* v. *Dryden,* 7 *Pick.* 52 ; *Emerson* v. *Fiske,* 6 *Greenl.* 200 ; *Pease* v. *Gibson, ib.* 81 ; *Melvin* v. *Whiting,* 13 *Pick.* 184 ; *Brewer* v. *Smith,* 3 *Greenl.* 44 ; *Marston* v. *Baldwin,* 17 *Mass. R.* 610 ; *Gleason* v. *Drew,* 9 *Greenl.* 79 ; *Ward* v. *Sumner,* 5 *Pick.* 59 ; *Badlam* v. *Tucker,* 1 *Pick.* 389 ; *Reed* v. *Jewett,* 5 *Greenl.* 96.

*J. Appleton* argued for the plaintiffs, and cited *Meyer* v. *Sharpe,* 5 *Taunt.* 74 ; *Giles* v. *Nathan,* 1 *Marsh.* 226 ; *Shumway* v. *Rutter,* 7 *Pick.* 56 ; *Lanfear* v. *Sumner,* 17 *Mass. R.* 110 ; *Parsons* v. *Dickinson,* 11 *Pick.* 352 ; *Tuxworth* v. *Moore,* 9 *Pick.* 347.

After a continuance, for advisement, the opinion of the Court was prepared by

WESTON C. J. — We perceive nothing conditional, in the sale of the shingles in controversy, from *Perry* to the plaintiffs.    The terms of the bill of sale are absolute, and payment is acknowledged.    The transfer of the lumber thence resulting, between the parties, is not affected or qualified, by the contingency under which *Perry* was to receive an additional consideration.    Nor does it appear to us to make any difference, that it was a part of the bargain, that *Perry* was to perform certain services for the plaintiffs, in the transit of the lumber.    It was an agency undertaken and assumed on their account.    When the lumber thus sold was designated and set apart from the mass, of which it was a part, the contract of sale was consummated, at least between the parties ; and the plaintiffs had a right to take immediate possession.

The defendants also claim under *Perry,* and by an instrument bearing date near a month prior to the sale to the plaintiffs.    The title of *Chase,* who sold to the defendants, was either as a pledge or a mortgage ; or if he was a purchaser, he was liable to account for the proceeds, after paying himself.    In determining the questions submitted to us, these transactions may be assumed to have been free from fraud.    The two instruments of sale are not necessarily conflicting.    There may have been lumber enough both for the

plaintiffs and *Chase*; and there is some evidence to this effect in the case. Regarding the paper given to *Chase* as evidence of a mortgage, his right would attach as mortgagee, notwithstanding *Perry* retained the possession, if the quantity expressed in it was severed, and set apart from the aggregate, of which it was a part, prior to the sale and delivery to the plaintiffs, and not otherwise; and the jury have neither found this fact, nor is there any evidence reported to prove it. But as *Chase* took possession of the lumber, it seems to have been intended that he should hold it, either by way of pledge, or as a purchaser, which some of the terms of the instrument indicate, in which case it must have been understood, that he was to account for its value, beyond what was required for his own security. It is unnecessary however to settle whether *Chase* is to be regarded as a pledgee or a purchaser. In either case, the rights of the parties, so far as they are conflicting, are to be governed by the principles decided in the case of *Lanfear* v. *Sumner*, 17 *Mass. R.* 110, that where different persons claim the same goods by conveyances equally valid, he who first lawfully acquires the possession, has the better title. And this fact the jury have found in favor of the plaintiffs.

But it is insisted that there is no evidence of delivery to the plaintiffs, or of possession taken by them, and that the Judge was not legally warranted in leaving it to the jury to infer such a fact from the evidence, if satisfied that it existed. The evidence was, that as many thousands of the shingles as were sold to the plaintiffs, were marked with the initial of the surname of one of them, and that they claimed such as were thus marked as their property. This coupled with their bill of sale, must, we think, be regarded as evidence of a delivery to them, proper to be left to the jury. There was ample time for such designation and delivery between *October,* when their bill of sale is dated, and the following *May,* when *Chase* took possession. In *Melvin* v. *Whiting,* 13 *Pick.* 184, it was holden to be altogether uncertain whether the initials engraved in the rock, were indicative of a claim to the soil or to the fishery; but in this case the mark clearly indicated a claim to the shingles. It was evidence, that those thus marked were set apart from the rest, and belonged to him, whose mark was affixed.

The jury having found, that the plaintiffs had the first delivery, their title is good, aside from any assignment of *Perry's* permit to them. He had an undoubted right to sell the shingles when made. *Ramsdell*, of whom he purchased the timber, does not interpose, if he had any right to do so. The assignment of the permit being immaterial, we cannot sustain the exceptions taken to the instructions of the Judge upon that part of the case, if their correctness was questionable, in regard to which it is unnecessary to give an opinion. From the evidence it would seem, that if judgment is rendered on the verdict, *Chase's* title to the entire quantity, mentioned in his bill of sale, will remain unaffected, having received an excess equal in value to what the plaintiffs have recovered.

*Exceptions overruled.*